UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| FABRIEAL DELANEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 25 C 50211 |
| v. | ) | |
| | ) | Judge Johnston |
| UNITED STATES OF AMERICA, | ) | Magistrate Judge Schneider |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S ANSWER TO PLANTIFF'S COMPLAINT**

Defendant United States of America, by its attorney, Andrew S. Boutros, United States Attorney for the Northern District of Illinois, for its answer to plaintiff Fabriel Delaney's complaint (Dkt. 1), states as follows:

**First Defense**

Delaney's suit is limited to Federal Tort Claims Act claims arising out of the events of December 17, 2021, December 29, 2021, to January 4, 2022, as set forth in the court's merit review order. Dkt. 10.

**Second Defense**

Delaney's medical negligence claim should be dismissed because he has not filed an affidavit or a reviewing health professional's report pursuant to 735 Ill. Comp. Stat. § 5/2-622(a) stating that there is a reasonable and meritorious cause for his medical negligence claim.

**Third Defense**

Delaney's claims about officers' use of force are barred by the Federal Law Enforcement Officer Immunity Act, 745 Ill. Comp. Stat. § 22/10, because the officers' conduct does not rise to the level of willful or wanton conduct.

**Fourth Defense**

Delaney's claims about officers' use of force are barred because correctional officers may use such force as is reasonably necessary to restore order and protect all parties from injury.

**Fifth Defense**

Delaney's damages should be reduced to the extent that his own negligence contributed in whole or in part to the damages of which he complains, and the Illinois law on contributory fault, 735 Ill. Comp. Stat. § 5/2-1116, applies to eliminate or reduce any recovery against the United States.

**Sixth Defense**

Delaney's claims are barred because he may not bring a lawsuit for mental or emotional injury suffered while in custody without a prior showing of physical injury. 28 U.S.C. § 1346(b)(1) and (2); 42 U.S.C. § 1997e(e).

**Seventh Defense**

Delaney's recovery, if any, is limited to the damages recoverable under the Federal Tort Claims Act. Delaney cannot recover from the United States an amount more than that set forth in his administrative tort claim. Delaney cannot recover attorneys' fees, pre-judgment interest, punitive damages, or obtain equitable relief.

**Eighth Defense**

Delaney's claims based on the events of December 17, 2021, are barred because Delaney failed to submit an administrative claim based on those events to the appropriate agency before bringing this lawsuit. 28 U.S.C. § 2675(a).

**Ninth Defense**

One or more of Delaney's claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), to the extent that allowing the claims to proceed will necessarily imply the invalidity of prison disciplinary findings entered against the Delaney including for incident report numbers 3582720 and 3583579.

**Tenth Defense**

Answering the specific allegations of the complaint, the United States of America admits, denies, or otherwise avers as follows:

**STATEMENT OF CLAIM**

**PARTIES & JURISDICITON**

**Complaint[1]:** Now come Fabriel Delaney 43749-424 *pro se* who invokes all the protections and benefits of the liberal proceedings and construance doctrine expressed in *Haines v. Kerner,* 404 U.S. 519, 30 L. Ed 652 (1972). Plaintiff brings this lawsuit pursuant to 28 U.S.C. §§ 1346 (b), 28 U.S.C. §§ 2671-80. The United States of America (hereinafter "USA Employees") is the only defendant in this lawsuit. The individuals involved who committed the heinous tortious acts against plaintiff were employees of the Federal Bureau of Prisons (hereinafter "BOP") The BOP agency is a counter part of the Department of Justice whom is under contract with the United

[1] Plaintiff does not consistently number the paragraphs in his complaint. The complaint started with unnumbered paragraphs, then numbered paragraphs before lapsing to unnumbered paragraphs.

States of America thus making the USA liable to plaintiff in accordance with the law of the place where the tortious acts or omissions occurred (quoting in part 28 U.S.C. § 1346 (b),(1), see also 28 U.S.C. § 2674). Put another way, the BOP Employees were "USA Employees" acting under the color of Federal law.

**Response:** Defendant admits that plaintiff purports to file a cause of action as alleged and that the court generally has jurisdiction over FTCA claims under 28 U.S.C. § 1346(b). Defendant denies that this court has jurisdiction to the extent that one, or more, of the exceptions to the FTCA apply, such as a failure to submit an administrative claim before bringing this action, 28 U.S.C. § 2675(a), and a failure to demonstrate any physical injury, 28 U.S.C. § 1346(b)(2). Defendant also denies plaintiff's characterization of the events giving rise to this action especially that employees of the BOP committed "heinous tortious acts" against plaintiff.

**Background of Complaint**

**Complaint:** Plaintiff is a pro se prisoner now being housed at USP Atwater in California while fighting the injustice he was served in Federal Court in the 7th Circuit District of Chicago where he was convicted of pimping and pandering charges, which the prosecution mislabeled as sex trafficking. This lawsuit is in regard to plaintiff past housing at USP Thomson Special Management Unit (hereinafter "SMU") located in Thomson Illinois. Plaintiff was housed in the Thomson SMU from Sept. 3, 2020, to Feb. 2023 when President Joe Biden signed an executive order to shut down the Thomson SMU program, due to vast complaints of extreme staff misconduct. These complaints alleged that Thomson SMU staff were beating and torturing inmates mainly by improper usage of restraint chairs, ambulatory chains and other tactics of violence and humiliation. The complaints also entailed that staff was influencing cellmates to attack one another while one was in handcuffs. The SMU program was set up as to where two prisoners were housed

in a cell together 23 hours a day w/ 1 hour for recreation or showers. In order for one inmate to leave the cell, one of them had to submit to hand restraints first (which required trust) then the other. Subsequent to receiving vast complaints of Thomson SMU employees (Defendant) which are also "USA Employees", US Senators Richard Durbin, Tammy Duckworth and others launched an investigation into the criminal/civil right violations occurring at the Thomson SMU. The Washington Lawyers Committee for Civil Rights & Urban Affairs (a prisoner Advocate group) also worked w/ the US Senators in investigating the complaints out of Thomson SMU. Even after the President shut down Thomson the US Senators continued its investigation into the Thomson corruption and sent letters to the Attorney General and the FBOP Director-in which they provided plaintiff w/ copies of the letter being that plaintiff was a client of the Washington Lawyers Committee. (Refer to Exhibit 1) Plaintiff will now detail how Thomson staff beat/tortured him for 4 nights straight which he refers as "4 nights in hell." Before he does, please review a report by the WLC – that contains stories from other victims presented to Senate Judiciary (Refer to Ex 2).

**Response:** Defendant admits that plaintiff is a pro se prisoner now being housed at USP Atwater in California but denies the rest of the allegations in this paragraph.

**(Statement of Facts)**

**Complaint:** I, Fabriel Delaney (43749-424) hereby swear under the penalty of perjury that the following statement is true & accurate to the best of my ability. When referenced please refer to Exhibits which are authentic BOP Medical Records. If called to testify I can attest that:

**Response:** Defendant admits that the attached medical records are authentic but deny the rest of the allegations in this paragraph.

1. **Complaint:** On Dec. 17, 2021, plaintiff was housed on F-3 range at USP Thomson in the Special Management Unit program, also known as the "SMU". On this day plaintiff told several correctional officers that he was feeling suicidal and requested to speak w/ psychology specifically, plaintiff asked C/O B. Brunson to contact psychology because he felt suicidal. At this point, plaintiff had a sheet wrapped around his neck. C/O Brunson told plaintiff "your goin to have try harder than that." (Declarant is often mentioned as "plaintiff")

**Response:** Defendant admits that plaintiff was housed on F-3 at USP Thomson on December 17, 2021, and was observed on that day with a sheet wrapped around his neck, but deny the rest of the allegations in this paragraph.

2. **Complaint:** On Dec. 17, 2021, while serving lunch trays C/O B. Brunson saw plaintiff standing on the desk with a sheet tied around his neck, and C/O B. Brunson began to spray O.C. also known as "mace" into the cell. Plaintiff hopped down, untied the sheet from his neck but C/O Bruson continued to spray the O.C. even after plaintiff untied the sheet and hopped down from the desk. Thomson staff then placed plaintiff in a restraint chair. When plaintiff was released, plaintiff discovered that a lot of his legal materials was sprayed w/ mace. Plaintiff was served an incident report for self-mutilation which was later expunged. While in the chair staff had the wrist restraints extremely tight.

**Response:** Defendant denies that Officer Brunson sprayed more O.C. into the cell than was necessary to stop plaintiff's suicide attempt and that plaintiff was placed in extremely tight wrist restraints but admit the rest of the allegations in this paragraph.

3. **Complaint:** Plaintiff wrote the Thomson SMU warden A. Ciolli, a letter complaining about how C/O Bruson sprayed him improperly, destroyed his legal work and chose not to contact psychology when he was feeling suicidal.

**Response:** Deny.

4. **Complaint:** On Dec. 28, 2021, while pulling inmates for showers C/O Brunson told C/O Cook while looking at plaintiff "yeah Delaney wrote me up to the Warden like a faggot snitch he is." C/O Brunson then pulled plaintiff cellmate "Renee Ellis" for showers. About an hour or so later C/O Brunson came to cell 345 and told plaintiff to cuff up. Plaintiff had socks on his wrists, so C/O Bruson told plaintiff to take them off. Plaintiff took off the sleeve socks from his wrists and submitted to hand restraints. C/O Hardin then walked inmate Renee Ellis up to Cell 345. C/O Hardin is very tall so he stood in a position to block the food slot, however, the other camera will show that Renee Ellis entered the cell–while plaintiff was cuffed and stopped at the entrance of the cell, kneeled down to be uncuffed by C/O Brunson. While plaintiff was hand cuffed–hands behind his back– inmate Ellis came out his cuffs and began punching plaintiff in his face and head. Plaintiff fell and inmate Ellis continued to rain down punches on plaintiff as C/O B. Brunson watched.

**Response:** Deny.

5. **Complaint:** C/O Brunson then sprayed OC and Renee Ellis cuffed up. B. Brunson placed restraints on Inmate. C/O Bruson then ordered plaintiff to walk out of the cell first. When plaintiff walked out the cell, an unknown officer had a camera recording. Plaintiff then stated, "I was attacked by my celly while in handcuffs." Plaintiff was rinsed and placed in a restraint chair. Plaintiff told Lt. Williams that he was set up and that inmate Ellis attacked him, but Lt. R. Williams would not listen. The handcuffs were extremely tight, but nurse K. Miller taunted plaintiff instead.

**Response:** Defendant admits that Officer Brunson used OC spray to stop plaintiff's fight with his cellmate and that plaintiff was rinsed and placed in a restraint chair but deny the rest of the allegations in this paragraph.

6. **Complaint:** While Plaintiff was in restraints C/O B. Brunson entered the cell–where plaintiff was cuffed and restrained in a Martin restraint chair–and slammed the shield down on plaintiffs' wrists where extremely tight cuffs cut plaintiffs' skin. C/O Brunson told plaintiff to "write my name in grievances again and your goin to get fucked up again." Plaintiff screamed out in agony as C/O Brunson slammed the shield down on his writs. During each 2-hour check no video camera was used. Hours later plaintiff was issued an incident report for fighting.

**Response:** Defendant admits that plaintiff was issued an incident report of fighting but deny the rest of the allegations in this paragraph.

7. **Complaint:** When plaintiff was released from the chair, he was issued an incident report for attacking inmate Ellis while he was in handcuffs. When plaintiff returned to his cell a lot of his personal property was missing and destroyed. Plaintiff MP3 player was missing. Plaintiff had just come from H-unit so had his real MP3 player w/ over 900 songs. Plaintiff family pictures were destroyed – cut in half and ripped into small pieces. Plaintiff hygiene products were also missing, such as sulfur & hair conditioner, shampoo, lotion, soap and toothpaste and A&D ointment. Plaintiff also noticed that a lot his legal paperwork missing, ripped and sprayed with Mace. Specifically, plaintiff was missing his grand jury transcripts of the government witnesses which were 4 witnesses, copies of his post-trial motions, his district court docket sheet and summary of judgment. The F3 camera video will reveal that Thomson staff went inside plaintiff's cell (345) while he was in the restraint chair. F-2 range video will also reveal that C/O Brunson had the shield in his hand during the 2-hour checks on plaintiff.

**Response:** Admit that when plaintiff was released from the chair, he was issued an incident report for attacking inmate Ellis but deny the rest of the allegations in this paragraph.

8. **Complaint:** While plaintiff was in the restraint chair on Dec. 29, 2021, staff did not feed him any food when plaintiff returned to cell 345 his cellmate had been moved to F-4 range. Plaintiff believes that his cellmate Renee Ellis was told by C/O B. Brunson that if he assaulted plaintiff, he (Brunson) would move him over to F-4 range. Plaintiff knows that Renee Ellis was trying to get over to F-4 range to be w/ his homosexual ex-lover Anthony Conway. Ellis and Conway were cellmates on E-4 range and Mr. Conway put a PREA complaint on Ellis. So, Ellis assaulted plaintiff and C/O Brunson moved him to F-4 as a reward for assaulting plaintiff. Renee Ellis had several incident reports and per Thomson policy was to remain housed on the disciplinary range which is F3.

**Response:** Deny.

9. **Complaint:** On December 30, 2021, Thomson staff attempted to move plaintiff to inmate Delaboin's cell on F- range. Plaintiff told staff that he couldn't house w/ Delaboin because plaintiff is a transgender inmate who came from a drop-out gang institution. Plaintiff then began to feel suicidal because he was emotionally distressed by Thomson staff by using inmates to attack him in hand restraints. Plaintiff believed that C/O Brunson and 1st shift Thomson staff was setting him up to be attacked by inmate Delaboin because plaintiff had voiced on the use of force camera that C/O Brunson had inmate Ellis attack him then fabricated an incident report falsely accusing plaintiff of assaulting Ellis while Ellis was in restraints.

**Response:** Deny.

10. **Complaint:** As plaintiff was pulled from cell 345, he was placed in the holding cage on F-3 range. Plaintiff was seen by Dr. Levy in which plaintiff cried hysterically because staff

was trying to get other inmates to harm him and possibly kill him while in hand restraints. Plaintiff begged Dr. Levy to put him on suicide watch to save him from himself and Thomson staff, and inmates who wanted to violently kill him. Plaintiff was escorted to the observation room on suicide watch. Before plaintiff left F-3, C/O Brunson walked up to him while he was in the holding cage on F-3 range and said "I thought you were from Chicago, stop being a faggot bitch. This is what happens to faggots who write me up." Plaintiff said nothing. The camera in F-3 will reveal that C/O Brunson walked up to cage that plaintiff was in around noon on Dec. 30, 2021. As plaintiff left F building to suicide watch, C/O Brunson and the 1st shift staff huddle together and told plaintiff "We will get you when you come back here" while they were all standing in the rotunda.

**Response:** The defendant admits that plaintiff was seen by Dr. Levy while in a holding cell, and then placed on suicide watch on December 30, 2021, but deny the rest of the allegations in this paragraph.

11. **Complaint:** During the day and night plaintiff—on Dec. 30, 2021—cried and contemplated suicide. Plaintiff was extremely sad and depressed (because Thomson staff was trying to kill him, so he believed) in the suicide observation room.

**Response:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph; accordingly, they are denied.

12. **Complaint:** On Dec. 31, 2021, Lt. R. Williams came to the observation room and told plaintiff he was going to be housed w/ inmate Carlito Bailey. Plaintiff told Lt. R. Williams that inmate Bailey is from an active gang yard and is an enemy to plaintiff. Lt. R. Williams told plaintiff "I don't care you faggot lil bitch, your goin in w/ Bailey or im goin to put you in the chair for 3 nights straight, you will beg me to take you out I promise." Plaintiff began to cry while explaining to Lt. R. Williams that staff was trying to get inmates to kill him. Lt. Williams ignored

plaintiff and left to assemble a tactical team. Before leaving Lt. Williams said "We told you we'd get you"

**Response:** Deny.

13. **Complaint:** Plaintiff saw Nurse Sweney and told her that the F-unit first shift was trying to get inmates to assault and kill him because staff put a hit on him. Nurse Sweeney told plaintiff there was nothing she could do. Nurse Sweeney documented this conversation with plaintiff and this conversation is documented in plaintiff medical file from Dec. 31, 2021 (Refer to Exhibit 3). Ms. Sweeney told Plaintiff "They already spoke to Dr Pliess."

**Response:** Defendant admits that plaintiff saw Nurse Sweeney but deny the rest of the allegations in this paragraph.

14. **Complaint:** Dr. Pliess came to see plaintiff while he was on suicide watch. Plaintiff told Dr. Pliess that he was still feeling suicidal and Dr. Pliess told plaintiff "Stop your crying like you're a little bitch, no one is trying to assault you" Dr. Pliess then walked off. An unknown Lieutenant walked up to the observation room and told plaintiff he was going to the cell w/ Bailey. Delaney (plaintiff) began to cry hysterically and started praying prostrate while in tears. The observation room camera from December 31, 2021, will reveal plaintiff hysterically crying pleading w/ the Lieutenant to leave him alone.

**Response:** Deny.

15. **Complaint:** Moments later, Lt. R. Williams pushed the restraint chair up to the observation room and smiled wickedly as he passed plaintiff while plaintiff was standing at the door. Plaintiff submitted to restraints. SIS Ms. Mccoy was recording w/ a camera. Plaintiff—on camera—stated that staff was trying to get inmates to harm him, and that C/O Brunson had inmate Ellis attack him in handcuffs because plaintiff complained to Warden Ciolli about his misconduct.

Plaintiff noticed that C/O Brunson was on the tactical team. Plaintiff begged Ms. McCoy to intervene and not let C/O Brunson do a 2-hour check because he knew C/O Brunson was going to assault him again. Plaintiff even stated that Nurse K. Miller let staff place restraints on him extra tight and told Lt. R. Williams that the restraints were "Fabolous". Plaintiff was then escorted to F-unit while in the restraint chair.

**Response:** Defendant admits that plaintiff was placed in a restraint chair following his suicide attempt but deny the rest of the allegations in this paragraph.

16. **Complaint:** During the first two-hour check C/O Brunson came in w/ the shield and assaulted plaintiff maliciously by slamming the shield down on plaintiff wrist restraints repeatedly causing plaintiff horrendous pain to the point the restraints cut into plaintiff skin which started bleeding. C/O Brunson – while slamming the shield down on Delaney's (plaintiffs) wrist – yelled "Fuck you Faggot and Ciolli, im goin to make sure your dick sucking mouth never again speak my name." Plaintiff cried out in agony as C/O Brunson slapped plaintiff and again, slammed the shield down on the hand restraints that were cutting into plaintiff's prior cuts on his wrists. As C/O Brunson assaulted plaintiff Lt. R. Williams stood there laughing.

**Response:** Deny.

17. **Complaint:** Lt. R. Williams and his 1st shift staff refused to let plaintiff used the toilet and they refused to feed him. The Lt. would come into the cell w/ a lunch brown bag and throw it on the shelf and tell plaintiff to get it, knowing that it was impossible because Delaney was strapped to the restraint chair. On the next 2-hour check, staff would toss the lunch bag in plaintiffs lap and the bag would contain garbage. On this day Dec. 31, 2022, plaintiff's restraints were so tight that plaintiff spent the whole day crying and praying to God for help. The pain was

excruciating that plaintiff blacked out multiple times. On Dec. 31, 2021, plaintiff received an infraction for threatening staff (ruse).

**Response:** Defendant admits that plaintiff received an infraction for threatening staff by deny the rest of the allegations in this paragraph.

18. **Complaint:** When the nurses would come and do checks they ignored that plaintiff told them he hadn’t ate, been rotated and that he urinated on his self, multiple times. Overnight, plaintiff continued to black in and out of consciousness from the severe pain caused by extremely tight wrist and body restraints and chains. Plaintiff urinated on himself several times and every restraint check he would cry to the Lt. that he was in pain and had to urinate, but he was taunted & ignored and assaulted by whoever was holding the shield during the 2-hour check when the officer would repeatedly slam the shield down the wrist restraints which were already extremely tight.

**Response:** Deny.

19. **Complaint:** On Jan. 1, 2022, Lt. R. Williams, Lt Wiess (who was now a acting captain), Unit Manager K. Smiddy and an Asst. Warden (unknown to plaintiff) came into the restraint cell. Captain Weiss told plaintiff that he was signing off on keeping plaintiff in the restraint chair another day. Plaintiff stated that he had done nothing to be place in the chair, staff had fabricated a I/R on him, staff had been assaulting him while in the chair, staff was not feeding him nor letting him use the toilet and finally plaintiff stated that staff was falsifying the logins to justify keeping him in restraints. Lt. Wiess and the other staff members ignored plaintiff and exited the cell after taunting him.

**Response:** Deny.

20. **Complaint:** During the day, Thomson staff members (unknown to plaintiff) continued to assault plaintiff w/ the shield—while the Lieutenant watched—during the 2-hour checks. During the night plaintiff cried and bled out his wrists while each nurse ignored his injuries. Some documented plaintiff's injuries so his medical file reveals his injuries, yet the nurses did nothing to help plaintiff. During the night Delaney (plaintiff) urinated on himself multiple times, yet staff refused to take him out the restraint chair or let him use the toilet.

**Response:** Deny.

21. **Complaint:** Plaintiff sat in a restraint chair being starved, deprived of toilet usage and being assaulted by lieutenants and several others—while the restraints were extremely tight and cutting his skin until it bled—for 55 hours straight. After eight hours, per BOP policy staff from health personal was required to supervise plaintiff while he was in the restraint chair, yet no one came to supervise him—after the 8-hour duration. (See 28 CFR 552.24 (f)).

**Response:** Deny.

22. **Complaint:** On January 2, 2022, Lt Marquez told plaintiff that he was going to house w/ inmate Rayon Tsootie – a native transgender. Plaintiff asked Lt. Marquez, was he setting him up and Lt. Marquez assured him that everything was ok. As plaintiff walked into F-3 range he walked up the stairs and saw staff pulling inmate Tsootie out of the cell. Inmate Tsootie saw plaintiff and stated "you know what time it is homeboy, get ready" staff had to hold inmate Tsootie because he was trying to run up on plaintiff. Plaintiff then told Lt. Marquez "You said everything was cool, he trying to fight me, im not goin in there" Lt. Marquez stated "you will be o.k. he not goin to fight you" then the F-3 camera will show Lt. Marquez pushed plaintiff into the cell. Inmate Tsootie entered the cell, plaintiff came out the cuffs, then inmate Tsootie came out of his restraints and started swinging on plaintiff. Plaintiff ducked most of the punches, but inmate Tsootie landed

some punches to plaintiff's head. Plaintiff never fought back because he knew Lt. Marquez set him up to be placed back in the restraint chair. Eventually Lt. Marquez started firing the pellet gun. Inmate Tsootie cuffed up and plaintiff cuffed up. Lt. Marquez put inmate Tsootie in a restraint chair and plaintiff back into the restraint chair for the third night in a row. On the use of force camera plaintiff alleged that Lt. Marquez set him up so he (plaintiff) could be placed in the restraint chair for 3 nights—just like Lt. R. Williams promised him (plaintiff) on Dec. 31, 2021.

**Response:** Defendant admits that plaintiff was placed in a restraint chair for fighting but deny the rest of the allegations in this paragraph.

23. **Complaint:** From Jan. 2, 2022, to Jan. 3, 2022, plaintiff again was starved denied toilet usage and was subjected to extremely tight restraints that cut his already damaged wrist. Plaintiff was so deprived of sleep that he began to hallucinate while crying out in pain. Plaintiff cannot remember who slammed the shield on his wrist were the restraints where, but it happened. Plaintiff spent at least another 24 hours in the restraint chair suffering, bleeding and crying out to God in pain.

**Response:** Defendant admits that plaintiff was in restraints on the dates alleged but deny the rest of the allegations in this paragraph.

24. **Complaint:** On January 3, 2022, plaintiff was released from the chair and had not slept in 3 nights. On the way to be placed in the cell w/ inmate A. Sims plaintiff told Lt. Marquez and the female officer escorting him (plaintiff) that he could not go in the cell w/ Sims because he was a trans inmate, and people are yelling to Sims that he should "crush" plaintiff which means violently assault. As plaintiff was standing Lt. Marquez told the female officer to take him down and the officer slammed plaintiff. Lt. Marquez told the use of force camera that

plaintiff refused to go into the cell assignment. Plaintiff was placed in the restraint chair a fourth night in a row, crying and bleeding in excruciating pain.

**Response:** Defendant admits that plaintiff was placed in a restraint chair for threatening a staff member but deny the rest of the allegations in this paragraph.

25. **Complaint:** During the fourth night plaintiff fell asleep w/ his eyes open and cried in agony from the throbbing pain in his wrists, knees and back. Staff refused to feed him, let him use the toilet and at least once slammed the shield down on extremely tight restraints on plaintiff's wrist. Plaintiff's lips split from dehydration.

**Response:** Deny.

26. **Complaint:** From Dec. 31, 2021, to Jan. 4, 2022, plaintiff was in restraints that were extremely tight and was cutting his wrist. The position of the restraint chair each night made plaintiff's throb (and back) w/ excruciating pain that shot up and down his body. Not once did staff allow plaintiff to use the toilet or stretch his limbs. All of the stuff including nurses saw the severe injuries on his wrist and forearm, yet no one opted to take plaintiff out of the chair. Once staff let inmate Delaney (plaintiff) out the chair they fabricated I/R to place Delaney back in the chair. Plaintiff only ate one meal thru out the four nights of torture. Staff often came in the cell and gave plaintiff empty lunch bags w/ garbage or nothing in it all. Plaintiff was tortured and assaulted at least once every day or night by staff slamming the shield down on the writs restraints that were already extremely tight. This occurred while there were multiple officers in the room including the Lieutenants, which was Lt. Marquez, Lt. Walden, Lt. R. Williams and a couple of unknown Lieutenants. Often plaintiff was called a "faggot nigger," a "bitch", a "chomo" which is slang for child molester—which plaintiff is not and "stupid faggot nigger."

**Response:** Defendant admits that plaintiff was in a restraint chair during the period alleged but deny the rest of the allegations in this paragraph.

27. **Complaint:** Plaintiff previously had back and knees problems along w/ aches in his neck. Plaintiff now has tremendous excruciating pains in his knees, back and neck to the point he can barely stand no longer than 10 minutes at a time. Plaintiff is currently on chronic care pain meds such as 800 MG Ibuprofen, Lidocaine pain patches and uses Diclpenac Sodium gel which he rubs on his bac, knees and neck daily and nightly. Plaintiff also takes 200 MG Zoloft (Sertraline) for anti-depressant—Plaintiff often has nightmares of being tortured and killed by BOP staff. Plaintiff is now a Care Level 2 inmate diagnosed w/ Major Depression Disorder.

**Response:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph; accordingly, they are denied.

28. **Complaint:** USP Thomson is no longer running the SMU program due to an Executive Order signed by President Joe Biden—to shut it down. Plaintiff is now still suffering mentally and physically from all the abuse he endured at SUP Thomson at the lands of "the Thomson Cowboys." Plaintiffs body is covered with, What National News calls "Thomson tattoos." The Thomson experience has changed plaintiffs' life how he simply just wants to move on, but it is difficult because of the nightmares and constant reminder of the beatings and torture by looking at his scarred skin. The Thomson tattoos on Declarants (Plaintiff) wrist and forearm often makes him cry when he looks at them. The SMU program is no Longer but Delaney's (plaintiff) mental distress anguish and physical damage still remains.

**Response:** Defendant admits there is no SMU program at FCI Thomson currently but denies the rest of the allegations in this paragraph.

29. **Complaint:** Although plaintiff has not been given relief by the BOP, it can still be proven that C/O B. Brunson was timed out for multiple months because of his fabrication of the I/R falsely accusing plaintiff of assault on an inmate (Ellis). Timed out meant that C/O Brunson was not allowed to come into contact w/ any inmates. Plaintiff submitted a grievance to SIA (Special Internal Affairs) sometime in the spring of 2022 and later plaintiff heard that C/O Brunson was later timed out. The SIA officer was Mr. Herlick.

**Response:** Deny.

31[2]. **Complaint:** On Dec. 29, 2021, plaintiff heard C/O Cook tell C/O Brunson "he will find out soon what we do to filers" in response to C/O Brunson telling him that plaintiff wrote him up to the Warden.

**Response:** Deny.

32. **Complaint:** While Plaintiff was in the restraint chair on Dec. 29, 2021, he told Lt. Willaims that C/O Brunson set him up to be attacked and framed him. Lt. R. Williams responded, "this is what happens to faggots who snitch on my staff". C/O Cook slam the shield on plaintiff's wrist, as well.

**Response:** Deny.

33. **Complaint:** On Dec. 30, 2021, while on suicide watch, plaintiff spoke w/ the Nurse (Ms. Heister) in regard to custody beating & torturing inmates in restraints. Plaintiff told Nurse that the medical governs the tightness of the restraints and that they could be held civilly liable. The nurse (Ms. Heister) told plaintiff that the lieutenants and guards doesn't want medical to intervene in how then run their prison—in regards to the restraints. Days later this same nurse (Ms. Heister) told Lt. Walden on or about Jan. 1, 2022, that the wrist restraints were extremely too

[2] Plaintiff's complaint does not include a paragraph 30.

tight and were bloody when the nurse ordered the Lt. to loosen the restraints. Ms. Heister (the nurse) documented all of this in Delaney's (plaintiff's) medical file that day. The plaintiff's wrist condition in the too-tight wrist restraint which prove that at least one of the Medical Nurses who did the two-hour restraints check covered up plaintiff's injury and torture (improper usage of the restraints on plaintiff's wrists).

**Response:** Deny.

34. **Complaint:** On Dec. 29, 2021, while Delaney (plaintiff) was crying from the excruciating pain the restraints was causing him, he begged Nurse K. Miller to loosen the restraints- because staff waited till plaintiff was in the restraint room off camera and tightened the restraints—and she laughed and said, "Lieutenant the restraints look fabulous".

**Response:** Deny.

35. **Complaint:** On Dec. 31, 2021, during a suicide risk assessment plaintiff told Dr. Pliess that he was still feeling suicidal because he was depressed and just wanted to die at the hands of himself instead of being killed by staff or inmates. Dr. Pliess told plaintiff "Your lying no one tried to kill you". Plaintiff told Dr. Pliess everything that occurred on Dec. 29 & 30, 2021—and that Lt. R. Williams was trying to get him assaulted and torture him for 3 nights in the restraint chair. Dr. Pliess told plaintiff to stop crying like a bitch and that no one was trying to assault him and walked off while plaintiff was talking to him. Plaintiff believed that Dr. Pliess was in on the plot to kill him because Nurse Sweeney told Delaney (plaintiff ) that Lt. Williams had previously spoken to Dr. Pliess and Dr. Pliess was rude to plaintiff and he took plaintiff off suicide observation—even though plaintiff clearly told him he (plaintiff) was still feeling suicidal—which allowed Lt. Willams to assemble his tactical team and put plaintiff in the restraint chair for 3 nights to torture him by improper usage of the chair & restraints.

**Response:** Deny.

36. **Complaint:** On Jan. 1, 2022, plaintiff—while hurting in the restraint chair—spoke w/ Captain Weiss in which he told plaintiff he was signing off on keeping plaintiff in the chair another 24 hours. Plaintiff told Captain Wiss that: 1) he was set up to be put in the chair; 2) he had done nothing wrong to be kept in the chair or placed in the chair; 3) staff was falsifying the log-ins so they could keep him in the chair longer; 4) no one from health personnel had been monitoring him which was policy when an inmate is kept in restraints passed 8 hours, Captain Weiss ignored most of plaintiff's statement and said " you just don't get it. We run Thomson not you my advice is try not to piss off Lt. Williams again." Captain Weiss then exited the room, leaving plaintiff to suffer another 24 hours of pain and distress in the restraint chair in extremely tight restraints.

**Response:** Deny.

37. **Complaint:** During each time in the chair from Dec. 29, 2021, to Jan. 4, 2022, staff never rotated plaintiff or let him stretch or use the bathroom, which violated BOP policy. [18 CFR 552.24]. During plaintiff stay in the restraint chair from Dec. 29, 2021, to Jan. 4, 2022, no staff from psychology department came to do an examination on plaintiff—which plaintiff believes would have hindered custody staff from beating and torturing him—which is required per BOP. policy every 24 hours. From Dec. 31, 2021, to Jan. 4, 2022, plaintiff spent over 8 hours in the restraint chair—each day—suffering yet no one from health personnel came to supervise him, which is required after every 8 hours per policy [28 CFR 552.24(F)]. During each of the medical examinations done inside the cells from Dec. 29, 2021, to Jan. 4, 2022, no video camera was used to record the examinations which is required per BOP policy [28 CFR 552.27 (c)]. Plaintiff believes that had this particular policy been honored by staff (and medical) then medical stuff

would not have withheld the seriousness of plaintiff's injuries from plaintiff's medical records—and custody possibly would not have beaten and tortured plaintiff in the cells while he was in the restraint chair because the medical examination videos would have revealed plaintiff's severe injuries (and his complaints) and physical and mental condition and the regional director would have had to forward any questionable inappropriate conduct the video revealed to the assistant director or central office.

**Response:** Deny.

38. **Complaint:** During several of the medical examinations while plaintiff was in the restraint chair from Dec. 29, 201 to Jan. 3, 2022, inside the cell off camera—plaintiff asked the Nurses (at least 3 of them) why they were not recording the examinations and why they weren't telling custody to loosen the restraints, and why they were not telling custody to feed him, let him use the toilet and give him water. Each time the nurses ignored plaintiff, one even laughed and taunted him saying "its not my job, stay outta the chair." After one of these moments, plaintiff believe it was Lt. Williams who told plaintiff "you keep snitching to the Nurses, they won't help you, their on our side." Then Lt. Williams stood their and told his staff to tighten the restraints. Plaintiff screamed in agony as the metal cut into previous cuts and sat improperly on his wrist bones. Staff laughed and exited the cell leaving plaintiff to cry and suffer in pain. Plaintiff believes L. Williams told staff to tighten the restraints on Dec. 29, 2021.

**Response:** Deny.

39. **Complaint:** On Dec. 31, 2021, while Plaintiff was suffering from the deep cuts on his wrists which had extremely tight wrist restraints on them, 2nd shift Lt. Marquez told plaintiff, "I can't let you out, you upset Lieutenant Willams"—after Plaintiff cried and begged to release him from the restraint chair. On Jan. 1, 2022, Lt. Walden told plaintiff "I was told to leave

you in this thing for the day in response to plaintiff. On 3rd shift Jan. 1, 2022, an unknown Lieutenant told plaintiff "Orders from Williams to keep you in this chair, what did you do"—in response to plaintiff begging to be released from the chair. Due to the excruciating pain Plaintiff was experiencing, he doesn't remember rather it was Lt. Marquez on Dec. 31, 2021, who told him that he can't be let out the chair and that he upset off Lieutenant Willams, but Plaintiff does remember that it was the 2nd shift Lieutenant.

**Response:** Deny.

40. **Complaint:** On Jan. 2, 2022—after plaintiff was assaulted by inmate Rayon Tsootie – during two-hour check while plaintiff was in the restraint chair (for the 3rd night in a row) he asked Lt. Marquez why he set him up to be attacked and put back in the chair. Lt. Marquez responded "Ask Willams" and exited the cell. Before they left plaintiff requested pain meds because the female c/o hurt his knees.

**Response:** Deny.

41. **Complaint:** On or about Jan. 5, 2022, to January 8, 2022, the pill line nurse provided plaintiff w/ triple antibiotic ointment for his damaged wrist and pain pills. Plaintiff complained to the nurses that his wrist bone and knees were damaged and that his hands were hurting so bad that he couldn't barely hold a pen. All of the nurses refused to contact a doctor and told him, "put in a sick call." Plaintiff later reviewed his medical records and discovered that a lot of his injuries were not listed or downplayed by falsely accusing plaintiff of manipulating the restraints. These were the same nurses who ignored plaintiff's pleas.

**Response:** Defendant admits that plaintiff was given ointment for his wrist and pain pills but deny the rest of the allegations in this paragraph.

42. **Complaint:** On Dec 17, 2021, Nurse Horst did a restraint check at 4:50 p.m. and she documented that the restraints on plaintiff wrist was too tight and that she was unable to get her finger between the left wrist restraint and plaintiff skin. Nurse Horst notified the lieutenant that the left restraint should be adjusted yet the Lt did not loosen the restraints. [Refer to Exhibit 4]

**Response:** Defendant admits the contents of Exhibit 4 but deny the rest of the allegations in this paragraph.

43. **Complaint:** On Dec. 29, 2021, while plaintiff was in the restraint chair (subsequent to C/O Brunson brutally assaulting him) none of the nurses documented plaintiff injuries except one. Nurse Heister stated that plaintiff had slight swelling on his right hand, and that the lieutenant adjusted the restraint. Again, none of the nurses prior to this assessment by Nurse Heister documented plaintiff injuries. [Refer to Exhibit 5]. The restraints were so tight that a blister formed on plaintiff wrist.

**Response:** Defendant admits the contents of Exhibit 5 but deny the rest of the allegations in this paragraph.

44. **Complaint:** On Dec. 31, 2021, (subsequent to Lt. Williams assembling a tactical team to place plaintiff in the chair for 3 nights straight) during the medical assessment plaintiff cried to staff at 10:45 AM stating that the restraints was too tight on his wrist bone, he had a blister on his wrist and that he had arthritis in his knee. [Refer to Exhibit 6] Staff ignored plaintiff cries; Ms. Miller did record plaintiff pain in his records (id).

**Response:** Defendant admits the contents of Exhibit 6 but deny the rest of the allegations in this paragraph.

45. **Complaint:** On Dec. 31, 2021, Nurse Miller, kasha documented during her medical assessment on plaintiff, while he was in the restraint chair, that plaintiff had a blister on his right wrist. [Refer to Exhibit 7] This assessment was done at 10:45 p.m.

**Response:** Defendant admits the contents of Exhibit 7 but deny the rest of the allegations in this paragraph.

46. **Complaint:** On Dec. 31, 2021, at 12:45 p.m. Nurse Miller did another restraint medical assessment on plaintiff while he was in the restraint chair, plaintiff complained that the restraints were too tight, and they were on his bones and that he can't move his fingers and Nurse Miller documented this in her medical assessment. However, Nurse Miller documented that the restraints move freely, and that plaintiff was without signs of medical distress which was false. (Refer to Exhibit 8) At this stage plaintiff's wrist were bloody and swollen yet Nurse Miller failed to document this. (id).

**Response:** Defendant admits the contents of Exhibit 8 but deny the rest of the allegations in this paragraph.

47. **Complaint:** On Dec. 31, 2021, at 2:50 p.m. (Which had been 4 hours since plaintiff first went into the restraint chair) Nurse Heister documented that both wrist restraints were too tight and that she could not get a finger underneath either wrist restraints. This documentation proves that the nurse Kasha Miller falsified the medical records earlier this day when she documented that Plaintiff's wrist restraints moved freely. Nurse Hiester stated that the lieutenant Adjusted the restraints (which were still too tight). Nurse Heister stated that there was no swelling or injuries noted. This was false. There was no mention of the prior wrist injures noted by Nurse K. Miller and by Nurse Heister herself. (Refer to Exhibit 9). At this time plaintiff's injuries had evolved by more swelling and infection.

**Response:** Defendant admits the contents of Exhibit 9 but deny the rest of the allegations in this paragraph.

48. **Complaint:** On Jan. 1, 2022, at 5:57 a.m., Nurse Bungard documented in her medical assessment of plaintiff in the restraint chair that plaintiff had no swelling or injuries. However Nurse Bungard stated there was evidence of resolved or almost resolved linear abrasions proximal to restraints, which is a understatement because at this stage plaintiff had deep cuts in his skin from the restraints on his wrist. Nurse Bungard then falsely stated that the restraints were not tight ("constructive") which was false. (Refer to Exhibit 10) plaintiff also had swelling in both wrists although Nurse Bungard documented that he didn't. (id).

**Response:** Defendant admits the contents of Exhibit 10 but deny the rest of the allegations in this paragraph.

49. **Complaint:** On Jan 1, 2022, at 10:45 AM Nurse Horst documented in her assessment of plaintiff in the restraint chair that the restraints on plaintiff's wrist "do not move freely and appear to tight" which contradicts what Nurse Bungard documented in her assessment prior to this one. Nurse Horst then documented that the restraints were lowered but plaintiff still felt they were too tight although the Nurse documented otherwise. Nurse Horst stated that there were indentations marks without skin breakdown. This was false. At this stage plaintiff had cuts and blisters on his wrist, Nurse Horst documented that plaintiff had no swelling or injuries which was false. Nurse Heister documented slight swelling on Dec. 29, 2021 and Nurse Miller documented a blister on plaintiff's wrist Dec. 31, 2021 yet Nurse Horst falsely states that plaintiff has no injuries or swelling (Refer to Exhibit 11) Thru out the remainder of Jan. 1, 2022, plaintiff suffered all day and night and Nurse Bungard, Nurse Jobin, Nurse Gendreau all falsified records by not recording plaintiff's injuries or swelling of his wrists and by falsely documenting that the

restraints move freely when they clearly did not. Nurse Horst documented that the wrist restraints did not move freely, and they remained that way thru out the entire day of Jan 1, 2022, and Jan. 2, 2022, and nowhere in the medical records did it state the lieutenant adjusted the tightness of the restraints. One Nurse even falsely stated plaintiff was offered bathroom.

**Response:** Defendant admits the contents of Exhibit 11 but deny the rest of the allegations in this paragraph.

50. **Complaint:** On Jan. 2, 2022, at 5:55 AM Nurse Bungard documented falsely that plaintiff had no injuries or swelling and adds that plaintiff complained that he had arthritis in his knees. At this state plaintiff had cuts and swelling on his wrist. Nurse Bungard falsely stated that the wrist restraints were not constrictive although Nurse Horst documented they were too tight just eh day before and the restraints had not been loosened. (Refer to Exhibit 12).

**Response:** Defendant admits the contents of Exhibit 12 but deny the rest of the allegations in this paragraph.

51. **Complaint:** After doing 55 hours in the restraint chair in extremely tight wrist restraints and Martin chains on his back plaintiff was released from the chair for 1 hour and then staff (Lt. Marquez) set him up to be placed back in the restraint chair. On Jan. 2, 2022, during plaintiff first medical assessment after he was set up by Lt. Marquez (around 6:45 p.m.) Nurse Marsh documented that plaintiff had minor abrasions on his lower back w/ scabbing and on his left forearm. The documentation of scabbing proves that the injuries was prior meaning also that the nurses on Dec 31, 2021, and Jan. 1, 2022, falsified the medical records by not documenting plaintiff's injuries. (Refer to Exhibit 13).

**Response:** Defendant admits the contents of Exhibit 13 but deny the rest of the allegations in this paragraph.

52. **Complaint:** On Jan 3, 2022, plaintiff remained in the restraint chair crying and suffering in pain until 5:30 p.m. when Lt. Marquez let him out the chair, only to be viciously slammed to the ground at Lt. Marquez command, simply because plaintiff was afraid to go into the cell w/ inmate A. Sims whom plaintiff believed was selected to harm him. In the morning of Jan. 3, 2022, Nurse Bungard (and others) documented that plaintiff had no injuries or no swelling and that the restraints were not constrictive—both assessments which were false. However, Nurse Bungard noted that plaintiff had linear reddish marks on his forearm which was a downplay of plaintiff injuries because plaintiff wrists were cut up and swollen. (Refer to Exhibit 14) later at 7:30 pm (after plaintiff was taken out the chair for 1 hour then slammed to the ground w/ no penological justification) he was placed back in the chair w/ extremely tight chains and restraints on his body and wrist; Nurse Heister falsely documented that the restraints move freely and that plaintiff had no injuries and no swelling or injuries at or distal to restraints. Plaintiff's wrists were severely swollen, and cuts were deep, and blisters were formed. (see Exhibit 15) Thru the night of Jan. 3, 2022, plaintiff's condition had gotten so severe that he blacked out several times from excruciating pain and he was so dehydrated that his bottom lip split open. An unknown Nurse documented plaintiff's lip split open (see medical file).

**Response:** Defendant admits the contents of Exhibits 14 and 15 but deny the rest of the allegations in this paragraph.

53. **Complaint:** On Jan. 4, 2022, at 5:30 AM Nurse Garcia falsely documented that the restraints move freely, plaintiff had no swelling or injuries at or distal to restraints and that plaintiff had not signs of dehydration. Nurse Garcia failed to note that plaintiff had deep cuts, blisters and swelling on both wrists. Ms. Garcia didn't even document the injuries that Nurse Horst, Nurse Marsh and others did document on the days before this one although those nurses also

downplayed plaintiff's injuries. Nurse Garcia also failed to document plaintiff's split lip like the nurse from that morning which proves Nurse Garcia falsified plaintiff medical records (Refer to Exhibit 16). On Jan. 4, 2022, at 7:30 AM, Nurse Horst documented that the restraint on Plaintiff's right wrist did not move freely and that she could not get a finger between plaintiff's skin and the restraint, which proves that Nurse Garcia and nurses the day prior all falsified plaintiff medical records by falsely documenting that the restraints were not constrictive and moved freely—because plaintiff had been in the chair since 5:30 pm the day prior. Nurse Horst falsely documented that plaintiff had no injuries or swelling at or distal to restraints, and that plaintiff was medically stable. At this stage plaintiff's wrists were cut and swollen. Nurse Horst falsely documented that plaintiff showed no signs of dehydration. This proves Nurse Horst falsified medical records because the nurse prior to her documented that plaintiff lip split from dehydration. (Refer to Exhibit 17).

**Response:** Defendant admits the contents of Exhibits 16 and 17 but deny the rest of the allegations in this paragraph.

54. **Complaint:** On Oct. 20, 2022, at 2:49 p.m. (after the Thomson corruption was exposed via National News) Nurse Bungard was told to check certain inmates for scarred skin from tight restraints. Nurse Bungard checked plaintiff's body for scars and discovered and documented scarred skin on plaintiff's wrists and back, which Nurse Bungard is one of the nurses who often downplayed plaintiff's injuries and or simply didn't document them at all which amounted to falsifying plaintiff's medical records. (Refer to Exhibit 18)

**Response:** Defendant admits the contents of Exhibit 18 but deny the rest of the allegations in this paragraph.

55. **Complaint:** Before plaintiff was beaten and tortured by staff in the restraint chair, he had a history of pain in his knees elating back to 2017 where a medical provider documented that plaintiff had "crepitus with flexion" in his knees and a loud sound occurs when he bends them. (Refer to Exhibit 19). Before plaintiff was beaten and tortured by staff in the restraint chair, he had a history of pain in his sore back/neck when he arrived in USP Thomson he was x-rayed where medical staff documented that he had chronic wedging of his vertebrae in his spine (Refer to Exhibit 20). Plaintiff now suffers in pain daily in his knees and back to the point he can barely stand for no longer than 10 minutes. On Sept. 3, 2024, plaintiff knees gave out and he fell out on the cell floor while he was housed at USP Atwater. Plaintiff is currently seeking stronger pain medicine for his knees and back in the BOP.

**Response:** Defendant admits the contents of Exhibits 19 and 20 but deny the rest of the allegations in this paragraph.

56. **Complaint:** The Thomson staff that harmed (beat and tortured) plaintiff is still employed w/ the BOP and no one has been held accountable for their nefarious actions. Plaintiff is currently trying to move on w/ his life yet it is very difficult knowing that these same staff members that harmed him still work in the BOP. As many read the stories in Washington Lawyers Committee report (Ex. 2) presented to the Senate Judiciary committee in 2023 no one but the survivors such as plaintiff (Declarant) will truly understand what surviving the cowboys in Thomson was truly like; and no but plaintiff and the rest of the survivors know what it's like to still be in the BOP where any day one of unethical staff members from Thomson could be transferred to a institution where he survivors are—and have to constantly be afraid that staff is going to retaliate and kill us (survivors) for blowing the whistle on the Thomson Cowboys. Either way I, Fabriel Delaney (the Declarant often mentioned as plaintiff) is happy that I declarant made

it out of Thomson SMU Alive because several other inmates did not. Rest in Peace to the inmates who died at the USP Thomson SMU

**Response:** Deny.

**Counts**

**Count 1 – (Refer to Paragraphs 1-2)**

57.[3] **Complaint:** TORT – Assault claim against Defendant United States of America (hereinafter "USA employees") under Illinois law acting under color of Federal Law. HOW – USA employee B. Brunson sprayed plaintiff w/ mace when plaintiff was in compliance and Mr. Brunson continued to spray plaintiff w/ mace after plaintiff untied the sheet from his neck on Dec. 17, 2021, INJURY – plaintiff was maced in his face and this incident put plaintiff in restraint chair RECOVERY SOUGHT – Compensatory, punitive and nominal monetary damages. (Refer to paragraph 1-3) The restraints were extremely tight scarring plaintiff (Refer to paragraph 42)

**Response**: Deny.

**Count 2**

58. **Complaint:** TORT – Claim for Negligence against Defendant "USA" and its employees acting under the color of Federal law. (Negligence under Illinois Law). HOW – USA employee B. Brunson refused to alert the psychology department when plaintiff told him he was feeling suicidal (which is BOP policy) thus breaching his duty under Illinois law to exercise reasonable and ordinary care for the life and health of a plaintiff, which caused the actual damage of : 1) plaintiff being improperly maced 2) plaintiff being placed in the restraint chair in extremely tight chains 3) plaintiff being assaulted (later) by Renee Ellis while he was in restraints 4) plaintiff

[3] The following paragraphs were not numbered in plaintiff's complaint. Numbers have been added for ease of reference.

being beaten and tortured in the restraint chair Dec 29, 2021 and Dec. 31 2021to Jan 4, 2022 – because Mr. Brunson's negligence on Dec 17, 2021, led to plaintiff redressing grievance against C/O Brunson by complaining to the Warden Mr. Ciolli led to C/O Brunson influencing Renee Eilis to assault plaintiff while he was in handcuffs and to Brunson beating and torturing plaintiff in the restraint chair.

**Response**: Defendant makes no answer to Count 2 as this Count was dismissed as set forth in the court's merit review order (Dkt. 10, p. 6). To the extent that an answer is required, the defendant denies the allegations of Count 2.

59. **Complaint:** The next day C/O Brunson continued his plot to assault plaintiff by attempting to put plaintiff in a cell w/ a inmate who was going to harm him. Plaintiff refusing to house w/ staff selected hitman led to Lt. Williams placing plaintiff in the restraint chair for 3 nights in a row where he was beat and tortured. All in all, C/O Brunson's Dec. 17, 2021, negligence was a catalyst to all the beatings and torture plaintiff suffered mentioned in this complaint. [Refer to paragraph 1-12] <u>INJURY</u> – Plaintiff was maced and placed in extremely tight restraints in the chair for over 4 hours on Dec. 17, 2021.

**Response**: Defendant makes no answer to Count 2 as this Count was dismissed as set forth in the court's merit review order (Dkt. 10, p. 6). To the extent that an answer is required, the defendant denies the allegations of Count 2.

60. **Complaint:** Plaintiff was beat and tortured in restraint chair from Dec. 29, 2021, to Jan. 4, 2022. Being beat by staff and being in restraints that cut his skin open for days at a time caused plaintiff actual damage and mental and emotional distress and it triggered plaintiff's depression and anxiety, which morphed into Major Depression Disorder (which plaintiff is now diagnosed with) and led to plaintiff attempting to commit suicide on Dec. 22, 2022. Being in the

chair (restraint) for days has caused knees and back (plaintiff's) to be in pain often to the point he can barely stand for no longer than a few minutes and he takes or is prescribed pain patches, 1600 milligram of Ibuprofen daily and sodium pain gel all of which works to cure his pain.

**Response**: Deny.

61. **Complaint:** Plaintiff is awaiting physical therapy and is now requesting a walking cane. Plaintiff mental stability is now at care level 2 which required a psychology doctor to interview him once a month RECOVERY SOUGHT – Compensatory, punitive monetary damage for the actual damage cited in the injury section above that caused plaintiff physical pain and emotional and mental distress, and mental anguish which was proximately caused by "USA" employees breach of their duty to exercise reasonable and ordinary care for plaintiff; the "USA employees" (by the facts cited above in section "HOW") breached their Bureau of Prison duty to "provide suitable quarters and provide for the safekeeping care and subsistence of all persons convicted of offenses against the US and that breach caused the injuries cited above.

**Response**: Deny.

**Count 3**

62. **Complaint:** TORT – Civil conspiracy claim under Illinois law against US Employees (under color of federal law) for conspiring to assault and torture plaintiff in a Martin restraint chair on Dec. 29, 2021. HOW – Due to the fact that C/O Brunson had to follow protocol per Bureau of Prison policy – to place plaintiff in a restraint chair – he had to speak to other superior staff such as the acting Lieutenant R. Williams which constitutes as an agreement.

**Response:** Deny.

63. **Complaint:** On Dec 29, 2021, Plaintiff heard C/O Cook tell C/O Brunson "he will find out soon what we do to filers" in response to Brunson telling him that plaintiff filed [Refer

to paragraph 31] C/O Brunson was doing shower pulls (pulling inmates out of cells for showers) w/ C/O Cook when he told C/O Cook that Plaintiff snitched on him by writing the Warden on him. Yet when plaintiff's cellmate Renee Ellis came back from the shower C/O Hardin escorted him. Plaintiff believes C/O Brunson used C/O Hardin (who was the number 1 officer and a range officer) to block out the camera view so it couldn't see who came out the restraints first seeing as how C/O Hardin is very tall [Refer to paragraph 4-5]

**Response:** Deny.

64. **Complaint:** Below are tortious actions committed by USA Employees in furtherance of the agreement to assault and torture plaintiff in the restraint chair: 1) C/O Brunson saw Renee Ellis clearly beat and assaulted plaintiff while plaintiff was handcuffed yet he falsely claimed that he witnessed plaintiff assault Ellis while he was handcuffed, so plaintiff could be placed in the restraint chair; 2) During the first 2-hour restraint check the F2 unit camera will show that C/O Brunson was holding the shield when they entered the cell that plaintiff was in chained to the chair; 3) While during the 2 hour restraint check C/O Brunson slammed the shield down on the wrist restraints that were already extremely tight on plaintiff skin which caused plaintiff skin to cut open and bleed as plaintiff screamed out in agony. Lieutenant watched and laughed and ignored plaintiff's cries to loosen the restraints and checked the camera to see that Renee Ellis came out the cuffs first meaning Ellis attached plaintiff in handcuffs not the other way around; 4) Plaintiff was issued an incident report falsely accusing him of assaulting his cellmate Renee Ellis while he was in hand restraints.

**Response:** Deny.

65. **Complaint:** This action also supports or constitutes as an agreement between C/O Brunson and Lieutenant R. Williams to beat and torture plaintiff in the restraint chair because

an inmate has to receive an incident report to be placed in the chair and the officers have to get permission from the Lt to write a 200 Series infraction (which is or was issued) [Refer paragraph 4-7] INJURY – plaintiff was beat, assaulted and tortured in the restraint chair by Defendants.

**Response:** Deny.

66. **Complaint:** Plaintiffs wrists were cut open from C/O Bruson slamming the shield down the wrist restraints. The tight restraints were so tight they scarred plaintiff's wrist. Plaintiff now suffers from major depression disorder and is prescribed anti- depressant. Plaintiff also suffers from extreme knee pain and takes multiple pain medication which the BOP prescribes to him. Plaintiff is also now a Care Level 2 inmate who has nightmares often of BOP staff killing him and has had multiple suicide attempts and ideations since Dec. 29, 2021, and Dec. 29, 2021, to Jan. 4, 2022. RECOVERY SOUGHT – Compensatory, punitive and Nominal monetary damages for the injuries cited above, along w/ mental and Emotional distress caused by Defendant.

**Response**: Deny.

**Count 4**

67. **Complaint:** TORT – Abuse of process claim under Illinois Law against Defendants (under color of federal law) for falsifying an incident report against plaintiff falsely accusing him of assaulting his cellmate Renee Ellis in hand cuffs and for using a restraint chair and Ambulatory chains to torture him. HOW – SAME FACTS cited ABOVE "INJURY". RECOVERY SOUGHT – SAME AS COUNT 3 cited under "RECOVERY SOUGHT". Additionally, Defendants also abused process by falsifying the log-in record in order to keep plaintiff in the restraint chair for excessive hours on Dec. 29, 2021. Finally, Defendants abused process by not allowing Plaintiff to use the bathroom or stretch while in restraints on Dec. 29, 2021, in violation of BOP policy 28 CFR 552.24(e). Defendants abused process by not having staff

from health personal supervise plaintiff on Dec. 29, 2021, after an eight-hour duration in restraints as was required per policy 28 CFR 552.24(f) (Refer to paragraph 37).

**Response**: Defendant makes no answer to Count 4 as this Count was dismissed as set forth in the court's merit review order (Dkt. 10, pp. 5-6). To the extent that an answer is required, the defendant denies the allegations of Count 4.

**Count 5**

68. **Complaint:** TORT – Negligence claim against Defendant "USA employees" (under color federal law) and Negligence brought (Under Illinois Law) HOW – USA Employee C/O Brunson had a duty to exercise reasonable and ordinary care for the life and health of prisoners; and C/O Brunson breached that duty by witnessing inmate Ellis assault plaintiff - while plaintiff was handcuffed and falsely accused plaintiff of assaulting inmate Ellis while Ellis was hand cuffed (which also draws inference that C/O Brunson influenced Ellis to assault plaintiff) which caused plaintiff to be placed in a restraint chair where C/O Brunson beat plaintiff w/ the shield (him and C/O Cook) [Refer to paragraph 4-6] C/O Brunson also had a duty (as an employee of the BOP) to provide suitable quarters and provide for the safekeeping, care and subsistence of all persons convicted of offenses against the U.S. C/O Brunson breached that duty by his actions cited above which caused the injuries stated above INJURY Plaintiff was placed in a restraint chair w/ extremely tight restraints where he received concussion from C/O Brunson slapping him and plaintiff wrist was cut open by C/O Brunson & C/O Cook slamming the shield down on the restraints where his wrist were causing "actual damage" to his skin and bone.

**Response**: Defendant makes no answer to Count 5 as this Count was dismissed as set forth in the court's merit review order (Dkt. 10, p. 6). To the extent that an answer is required, the defendant denies the allegations of Count 5.

69. **Complaint:** Plaintiff suffers actual damage from C/O Brunson's Negligence due to his mental and emotional distress and mental anguish and anxiety. Plaintiff is now diagnosed with major depression disorder, a Care Level 2 inmate and believes that defendants Negligence triggered his depression causing it to morph into Major Depression Disorder – (which he now takes 200 mg of psych meds daily) which prompted him to attempt suicide on Dec. 22, 2022. RECOVERY SOUGHT – Compensatory, and punitive monetary damages for the same injuries cited above under "INJURY." Plaintiff also seeks monetary damage for the permanent scars (Thomson tattoos) left on his wrists and for emotional and mental distress caused by Defendants.

**Response**: Defendant makes no answer to Count 5 as this Count was dismissed as set forth in the court's merit review order (Dkt. 10, p. 6). To the extent that an answer is required, the defendant denies the allegations of Count 5.

**Count 6**

70. **Complaint:** TORT – ASSAULT claim against Defendant "USA employee" under Illinois Law (acting under color of federal law HOW – SAME Facts Cited above in Count 5 under "INJURY" INJURY – SAME Facts cited above in Count 5 under "INJURY" RECOVERY SOUGHT – SAME Recovery sought above in count 5 under "Recovery SOUGHT" Plaintiff also seeks monetary dames for the scars, "Thomson Tattoos", left permanently on his wrists and for mental and Emotional distress defendants caused him.

**Response**: Deny.

**Count 7**

71. **Complaint:** TORT – Battery claim against Defendant "USA Employees" acting under color of Federal Law (under Illinois Law). HOW – SAME facts cited above in Count 5 under

"INJURY". INJURY – SAME facts cited above in count 5 under "INJURY". RECOVERY SOUGHT – SAME Recovery Sought cited above in County 5 under "RECOVERY SOUGHT".

**Response**: Deny.

**Count 8**

72. **Complaint:** TORT – Intentional Infliction of Emotional Distress Claim under Illinois Law against Defendant "USA Employees" acting under color of Federal Law. HOW – SAME facts cited above in Count 5 under "HOW. (Also) SAME facts cited above in Count 5 under "INJURY". "INJURY". INJURY – SAME injuries cited above in count 5 under "INJURY". RECOVERY SOUGHT – SAME Recovery sought cited above in Count 5 under "RECOVERY SOUGHT".

**Response**: Deny.

**Count 9**

73. **Complaint:** TORT – Failure to Train & Supervise claim against Defendant "USA Employees" (under Illinois Law) acting under color of Federal law. HOW – SAME Facts cite above in count under "HOW". Had C/O Brunson's superiors such at Lt. Williams, the Captain, Assistant Warder, Warden and BOP. top Executive staff trained and supervised him he possibly would have not committed the torts cited above in Count 4-8 causing plantiff physical, mental and emotional damage. INJURY – SAME injury cited above in Count 5 under "INJURY". RECOVERY SOUGHT – SAME AS count 5 cited above under "RECOVERY SOUGHT".

**Response**: Deny.

**Count 10**

74. **Complaint:** TORT – Medical Negligence claim under Illinois State Law against Defendants under color of Federal law. HOW – On Dec. 31, 2021, plaintiff was in observation

room on suicide watch when Lt. T. Williams and an unknown lieutenant told plaintiff he was either going in the cell w/ inmate Carlito Bailey (whom plaintiff told them was his enemy) or they would put him in the restraint chair for 3 nights straight.

**Response:** Deny.

75. **Complaint:** When the lieutenants left the observation room Dr. Pliess approached the observation cell and plaintiff told him that he still felt suicidal, and that custody was trying to get him killed by certain inmates they selected to assault him in handcuffs – and that they had done this already. Dr. Plies accused plaintiff of lying on staff, used profane language w/ him by calling plaintiff derogatory names and told plaintiff he was being taken off suicide watch, although plaintiff explained that Lt. R. Williams was trying to run a tactical team on him and torture/beat him in the restraints chair because Plaintiff didn't want to house w/ their selected "hit man chosen to assault plaintiff. Plaintiff even told Dr. Pliess that Lt. Williams said he was going to put plaintiff in the restraint chair for 3 nights and Dr. Pliess ignored plaintiff, walked off and took plaintiff off suicide watch knowing that plaintiff told him he was still feeling suicidal and knowing that Lt. Williams wanted to assemble a tactical team to put plaintiff in the chair.

**Response:** Deny.

76. **Complaint:** At 8:25 AM plaintiff spoke to Nurse Sweeny while he was still in the observation room and told her while in tears that he wanted to die in peace and that staff had a hit on him. Nurse Sweeney documented this conversation and the fact that she notified psychology about plaintiff's comment. She also stated there was nothing she could do because Lt. Williams already spoke to Dr. Pliess. (Refer to paragraph 12-15, 35). Dr. Pliess, Nurse Sweeney and psychology staff had a duty to provide suitable quarters, safe keeping, care and subsistence of plaintiff and breached that duty by removing plaintiff off of suicide watch knowing that plaintiff

told him he was still feeling suicidal, and Nurse Sweeney states she contacted psychology after plaintiff stated he wanted to die; while he was still in the observation room used for suicidal inmates.

**Response:** Deny.

77. **Complaint:** Plaintiff was in a suicide smock as well. Dr. Pliess even came to speak w/ plaintiff after plaintiff spoke w/ Nurse Sweeney and told him that he was still feeling suicidal, in which Dr. Pliess again ignored plaintiff. Dr. Pliess and medical staffs' negligent actions caused plaintiff "actual harm" because plaintiff told Dr. Pliess and Nurse Sweeney that staff had a 'hit" on him and was trying to put him in the restraint chair for 3 nights so they could beat and torture him, which they did from Dec. 31, 2024 to Jan. 4, 2022 (See Facts in Count 11 & 12) yet Dr. Pliess still took plaintiff off suicide watch knowing that plaintiff said he was suicidal which led to plaintiff being beat and tortured for 3 nights in the restraint chair by Defendant (USA Employees) [Refer to paragraph 13-26] INJURY – SAME injuries cited in Count 5,4,3 under "INJURY". RECOVERY SOUGHT – SAME RECOVERY IN count 5 under "Recovery Sought".

**Response**: Deny.

**Count 11**

78. **Complaint:** TORT – Conspiracy claim under Illinois Law against Defendant (under color of federal law) for conspiring to assault and torture plaintiff for 3 nights straight in a Martin restraint chair thru physical beating, improper usage of restraints, starvation and mental distress and humiliation, from Dec. 31, 2021 to Jan. 3, 2022. HOW On Dec. 31, 2021, plaintiff was on suicide watch. Lt R. Willams – along w/ a unknown Lieutenant- told plaintiff that if he didn't agree to go house w/ inmate Carlito Bailey he would make sure he put plaintiff in the restraint chairs for 3 nights straight and that plaintiff would beg him to let plaintiff out the chair.

**Response:** Deny.

79. **Complaint:** The following statements made by the "USA Employees" combined reveal the 'agreement' to beat and torture plaintiff in the restraint chair for days. Each statement was made at different times thru out the 3 nights. On Dec. 30, 2021, C/O Brunson told plaintiff that "we will get you when you come, tomorrow, back here" as plaintiff was walking to the observation room to be placed on suicide watch. (refer to paragraph 10). As Lt. Williams was leaving the observation room to assemble a tactical team on plaintiff – to place him in the restraint chair Dec. 31, 20221 – Lt. Williams said, "we told you we'd get you." (refer to paragraph 12)

**Response:** Deny.

80. **Complaint:** On Dec. 31, 2021, while plaintiff was in the restraint chair plaintiff cried and begged an unknown lieutenant (possibly Lieutenant Marquez) to let him out the chair or loosen the restraints and the lieutenant responded with "I can't let you out. You upset Lieutenant Williams" (Refer to paragraph 39). On Jan. 1, 2022, while plaintiff was in the restraint chair, still from the day before, Captain Weiss, Unit Manager Ms. Smiddy and Lt. Williams entered the cell. Plaintiff began to explain how C/O Brunson set him up to be attacked by his cellmate and that staff was falsifying logins to keep him in the restraint chair. Captain Weiss ignored plaintiff and stated that he was still going to sign off on keeping plaintiff in the chair. Captain Weiss further stated, "you just don't get it we run Thomson not you, my advice is try not to piss of Lieutenant Williams again" (Refer to paragraph 36).

**Response:** Deny.

81. **Complaint:** Later that day on Jan. 1, 2022, plaintiff pleading in agonizing horrendous pain begged Lt. Walden to take him out the restraint chair. Lt. Walden responded, "I was told to leave you in this thing for the day". (Refer to paragraph 39). On Jan. 1, 2022, during

the 3rd shift plaintiff again begged and pleaded to an unknown lieutenant to take him out the chair and the lieutenant stated, "orders from Williams to keep you in this chair, what did you do". (Refer to paragraph 39).

**Response:** Deny.

82. **Complaint:** On Jan. 2, 2022 after plaintiff was set up to be placed back in the chair (in which he had just spent 55 hours in the chair and was released for 1 hour only) plaintiff asked Lieutenant Marquez why he set him up and Lt Marquez replied "ask Williams" and exited the cell to leave plaintiff to suffer in agonizing pain for the 3rd night in a row just like Lt. Williams promised. (Refer to paragraph 40)

**Response:** Deny.

83. **Complaint:** TORTIOUS ACTS*. The following actions overtly reveal that USA Employees engaged in multiple tortious acts in furtherance of their conspiracy to beat and torture plaintiff a Martin restraint chair for 3 nights in a row:

**Response:** Deny.

84. **Complaint:** 1) On Dec. 31, 2021 Dr. Pliess became aware that plaintiff still felt suicidal and that plaintiff was alleging that Lt. Williams (and other Thomson staff) was trying to get him assaulted; and that Lt. Williams was threating to put plaintiff in the restraint chair for 3 nights, yet Dr. Pliess went and spoke w/ Lt. Williams and despite plaintiff's statement of feeling suicidal – took plaintiff off suicide watch which violated BOP policy (Refer to paragraph 12-15, 35).

**Response:** Deny.

85. **Complaint:** 2) On Dec. 31, 2021, C/O Brunson came into the holding cell where plaintiff was strapped to the restraint chair w/ extremely tight wrist restraints and slammed the

shield down repeatedly on the wrist restraints causing plaintiff's skin to cut open as plaintiff cried out in agony which also violated BOP policies against using force to punish inmates (552.22 (b)) (Refer to paragraph 16)

**Response:** Deny.

86. **Complaint:** 3) During the entire day and night of Dec. 31, 2021, Thomson Lieutenant R. Williams would not feed plaintiff any food but instead come into the folding cell (while plaintiff was strapped in the chair) and toss a bag lunch on the table and tell plaintiff to get it knowing that was impossible because plaintiff was strapped to the chair. On the next two-hour check Lt. Williams would toss the brown bag in plaintiff's lap and plaintiff discovered there was garbage and human spit inside w/ no food. (Refer to paragraph 17).

**Response:** Deny.

87. **Complaint:** 4) On Dec. 31, 2021, all of the Nurses who did the medical assessment on plaintiff ignored his cries that staff had not fed or rotated him which is also a violation of BOP policies specifically 552.24 (d). The nurses also ignored plaintiff's cries that he urinated on himself, and they ignored plaintiff pleading that he had not been allowed to use the bathroom, a violation of BOP policy 552.24 (e). The lieutenants also ignored plaintiff's crying out in pain because of the tight restraints on his wrist skin and bone, and the Lt and the guards ignored the fact that plaintiff had urinated on himself several times. Instead, they all taunted him. During the night of Dec. 31, 2021, and early morning of Jan 1, 2022. Plaintiff brought in his New Yar being starved humiliated and beat by staff. (Refer to paragraph 18) 5).

**Response:** Deny.

88. **Complaint:** 5) On Jan. 1, 2022, the Captain Mr. Weiss told plaintiff while he was in the chair that he was signing off on keeping him (plaintiff) in the chair past 24 hours which

violated BOP policies cited in 552.24 (G) because the warden has to approve and a review of all the check logs has to be sent to region including psychology service check logs which never was made due to the fact psychology was required to examine plaintiff once every 24 hours which was not done violating BOP policy 552.24 (F). Again, the Captain did not, or should I say he clearly circumvented policies to keep plaintiff in the restraint chair suffering in excruciating pain. (Refer to paragraph 19, 36, 37).

**Response:** Deny.

89. **Complaint:** 6) On Jan. 1, 2022, during the entire day and night plaintiff was starved, humiliated, and assaulted w/ the shield during the two-hour checks and deprived of toilet usage. Plaintiff endured this cruel treatment in the restraint chair for 55 hours strait until he was let out the chair for only 1 hour, just to be set up by Lieutenant Marquez to be placed back in the chair to endure the same treatment for another 24 hours. (Refer to paragraph 20-23).

**Response:** Deny.

90. **Complaint:** 7) In order to place plaintiff into a cell to force housing plaintiff w/ a hostile inmate (Rayon Tsootie) who clearly was showing signs of imminent danger towards plaintiff by telling plaintiff "you know what time it is homeboy" and even trying to run up to the plaintiff to the point staff had to hold Inmate Tsootie back, and when plaintiff told lieutenant Marquez that he didn't want to house w/ inmate Tstootie because he was trying to fight him, Lt. Marquez shoved plaintiff inside the cell anyway. Lt Marquez then stood by the cell door and witnessed inmate Tstootie attack plaintiff w/o plaintiff fighting back yet Lt. Marquez falsified an incident report accusing plaintiff of fighting Tstootie to justify placing plaintiff back in the restraint chair for a 3rd night of torture. (Refer to paragraph 22-23).

**Response:** Deny.

91. **Complaint:** 8) In order to keep plaintiff in the chair for 24 hours at a time Thomson staff had to follow BOP policies and many of them were circumvented and violated which is how they were able to get away with beating, starving and humiliating plaintiff and how staff was able to keep plaintiff in the chair pass eight hours.

**Response:** Deny.

92. **Complaint:** First, staff falsified the 15-minute check logins saying that plaintiff was still being disruptive. Second, no health personnel came to supervise plaintiff after he spent 8 hours in the restraint chair which violated BOP policy 552.24 (f). Health personnel had to document (pass eight-hour duration in the restraint chair) date and time of examination Body position of inmate in restraints, the restraints and its adequate hydration, Possible medical reason for behavior of inmate, deterioration of inmate's health and any other significant findings and comment. Had health personnel documented the factors above regarding plaintiff's condition in the chair it is possible that Health personnel would have complained about plaintiff's obvious detrimental bad condition (physical & mental) and possibly custody would have stopped mistreating plaintiff – afraid of ramifications from superiors such as the regional director - and released him from the chair putting a halt to the treacherous conspiracy to assault and torture plaintiff for three nights.

**Response:** Deny.

93. **Complaint:** Third, each medical assessment conducted after application of restraints – involving use of force- was required to be recorded yet the Nurses nor custody recorded any of the medical assessments on plaintiff done in the holding cell while he was in the chair from Dec. 31, 2021, to Jan. 4, 2022, which violated BOP policy 552.27 (c). Had this policy been followed, the medical assessment videos in the holding cell would have revealed plaintiff's severe

conditions and his injuries- and his complaints including the tightness of his wrist restraints. This would have deterred custody from their continuous abuse on plaintiff and would also have deterred the nurses from falsifying the medical records and downplaying plaintiff's injuries in them.

**Response:** Deny.

94. **Complaint:** As mentioned in tortious act #5 (Above) keeping plaintiff in the restraint chair past 24 hours (which they did twice – Dec. 31, 2021 to Jan 2, 2022 which plaintiff spent 55 hours being tortured in the restraint chair straight and 23 hours straight from Jan 2, 2022 to Jan. 3, 2022) required the warden to approve of it which he also had to review all the check log including the examinations from psychology which was required to be done every 24 hours but was not done by psych staff and the warden had to review the examination by health personnel which was also required after every 8 hour duration of inmate in the Martin chair which was also not done by staff all in violation of BOP policies 552.24 (f). So, there was no way staff or the warden followed the policy to keep plaintiff in the chair past 8 hours or 24 hours because the procedure that required adherent was circumvented thus also violating BOP policy 552.24 (G).

**Response:** Deny.

95. **Complaint:** Finally, falsifying the 15-minute logins by accusing plaintiff of disruptive behavior permitted staff to keep plaintiff in the chair. This manipulated BOP policy 552.24 (e) and w/o the falsification of the logins staff would've had to release plaintiff from the chair within the first couple hours because plaintiff never did anything disruptive while in the chair (Refer paragraph 37) INJURY – SAME INJURY cited in count 3 under "INJURY."

**Response:** Deny.

96. **Complaint:** Also, plaintiff was beat, starved and tortured by extremely tight wrist restraints, and body chains on his person. Plaintiff's knees and back and neck is now

constantly sore where plaintiff can barely stand up no longer than 10 minutes. Plaintiff was diagnosed w/ antisocial disorder and depression when staff assaulted & tortured him. Now plaintiff mental disorder has evolved into major depression disorder which to BOP considers a serious mental illness per policy. Plaintiff now takes multiple anti-depressants prescribed by a doctor and pain medication daily. Plaintiff is currently trying to get stronger Medication for his pain. Plaintiff suffered from Mental and Emotional Distress due to Thomson staff beating and torturing him from Dec. 29, 2021, to Jan. 4, 2022, RECOVERY SOUGHT – Plaintiff seeks compensatory, punitive and nominal monetary damages.

**Response**: Deny

**Count 12**

97. **Complaint:** TORT – Abuse of process under Illinois State law. HOW – Thomson staff circumvented and violated multiple BOP policies in order to succeed (and cover up) beating and torturing plaintiff in the restraint chair for 3 nights in a row (Refer to tortious Act #8 in count 11). Also Refer to paragraph 37. INJURY – SAME injury cited in Count 11 under "INJURY" RECOVERY SOUGHT – SAME RECOVERY SOUGHT in Count 11 under "RECOVERY SOUGHT (plaintiff also brings this count against Defendant under the color of Federal law).

**Response**: Defendant makes no answer to Count 12 as this Count was dismissed as set forth in the court's merit review order (Dkt. 10, pp. 5-6). To the extent that an answer is required, the defendant denies the allegations of Count 12.

**Count 13**

98. **Complaint:** TORT – Medical Malpractice under Illinois Law. HOW: 1) Dr. Pliess took plaintiff off suicide watch although plaintiff told him and Nurse Sweeney that he still felt suicidal. (Refer to paragraph 13-14, 35). This course of action by Dr. Pliess violated BOP

suicide prevention policies; 2) Medical nurses failed to record every medical assessment on video while plaintiff was in the restraint chair which would have prevented falsification of medical records because the video would have revealed plaintiff's injuries and physical and mental condition. This course of action violated BOP policy 552.27 (c) (Refer to paragraph 37); 3) Health personnel failed to supervise plaintiff in the chair after every 8-hour duration Dec. 31, 2021, to Jan. 4, 2022, which violated BOP policy 552.24 (f) (refer to paragraph 37); 4) From Dec. 29, 2021, to Jan. 4, 2022, the medical nurses ignored plaintiff's cries for help and injuries when they did their medical assessments on plaintiff while he was in the restraint chair. The medical nurses observed plaintiff's injuries on his wrists and the tightness of the wrist restraints and then went back to the medical department and falsely documented factors of plaintiff's condition (injuries) (and swelling) and the Factors of the tightness of the restraints on him.

**Response:** Deny

99. **Complaint:** When paragraphs 42-54 in the attached Declaration combined w/ the attached Exhibits 4-18 are reviewed in its totality they reveal that the medical nurses Ms. K. Miller, Ms. C. Horst, Ms. S. Heister, C. Bungard, V. Garcia, Mr. Marsh, Ms. Joblin and other falsified plaintiff's medical records Dec. 29, 2021 to Jan. 4, 2022 by not recording plaintiff's injuries and swellings and by downplaying or minimizing plaintiff's injuries and by falsely documenting that the restraints on plaintiff wrist move freely and were not constrictive (tight) and by stating that plaintiff was not in medical distress. (Please refer to paragraph 42-54 and Exhibits 4-18). Again, had the nurses not violated BOP policy 552.27(c) and recorded on video every medical assessment while plaintiff was in the chair, then it would have been difficult for them (nurses) to falsify plaintiff's medical records. INJURY – SAME INJURY cited in Count 11 under "INJURY"

RECOVERY SOUGHT – SAME RECOVERY SOUGHT in count 11 under "Recovery Sought". (plaintiff also brings this count under the color of federal law – against Defendant).

**Response:** Deny

**Count 14/Count 15**

100. **Complaint:** TORT – Assault (and battery is Count 15) claim under Illinois law against Defendant "USA Employees" under the color of federal law, (acting) HOW - USA Employees C/O Brunson and others (correctional officers & Lieutenants) beat plaintiff w/ the shield – and with hands multiple times from Dec. 31, 2021 to Jan. 4, 2022, while plaintiff was in the restraint chair off camera and applied extremely tight chains and wrist restraints to the point it cut plaintiff skin open [Refer to paragraph 16-30] [SAME For Count 15] INJURY – Same injures cited above in count 11 under "INJURY" [Same for Count 15] RECOVERY SOUGHT – SAME recovery sought in Count 11 under "RECOVERY SOUGHT" (Same as Count 15).

**Response**: Deny

**Count 16**

101. **Complaint:** TORT – Negligence Claim under Illinois Law against Defendant "USA Employees" acting under the color of Federal law. HOW – "USA Employees" had a duty to exercise reasonable and ordinary care for the life and health of plaintiff and Lt. Williams C/O Bruson, Lt. Marquez, Lt. Walden, the Nurse Dr. Pliess and the unknown staff breached that duty by committing all of the tortious acts (1-8) cited in Count 11 (Refer to the tortious 1-8 acts cited in Count 11) INJURY – The same actual damage that caused the same injuries cited above in Count 11 under "INJURY" RECOVERY SOUGHT – SAME RECOVERY SOUGHT in Count 11 under "RECOVERY SOUGHT"; The Bureau of Prisons shall provide suitable quarters and provide for the safe keeping, care and subsistence of all persons convicted of offenses against U.S.A.

Defendants "USA Employees" Lt. Williams Lt. Marques, Lt Walden, Dr. plies, C/O Brunson and others breached this duty by committing all the tortious acts cited in Count 11 and by the agreements in the conspiracies in count 11 that caused injuries in count 11 (Actual Damages).

**Response**: Defendant makes no answer to Count 16 as this Count was dismissed as set forth in the court's merit review order (Dkt. 10, p. 6). To the extent that an answer is required, the defendant denies the allegations of Count 16.

**Count 17/Count 18**

102. **Complaint:** TORT – Assault (and battery [count 18]) claim under Illinois law against defendant "USA Employees" who was acting under the color of Federal law. HOW – ON Jan. 3, 2022, Lt. Marquez ordered a female officer to slam plaintiff to the ground because plaintiff refused to house w/ inmate Anthony Sims whom plaintiff believed was going to assault him. The female officer later wrote a fabricated infraction falsely accusing plaintiff of threating her yet when she slammed plaintiff Lt Marquez (only) said to the use of force camera that plaintiff refuse to go in the cell w/ inmate Sims [SAME for Count 18, Battery] [refer to paragraph 24] plaintiff was then placed back in the restraint chair in extremely tight wrist restraints and chains that were placed on his sore open cuts.

**Response:** Deny

103. **Complaint:** During the 2 hour restraint check a unknown officer slammed the shield down on plaintiff wrist restraints which caused tremendous pain to plaintiff wrist body because his wrist were already sore and cut and bleeding and swollen from the past 3 days and nights of beatings and torture [Reer to paragraph 25-26] [SAME for Count 18, Battery] INJURY – Defendant "USA Employees" female C/O Ms. KORY slammed Plaintiff unlawfully while he was in hand restraints (behind his back) and the officer hurt plaintiff knees, back and wrists when

she slammed him. Plaintiff was in excruciating pain because of the tight chains and restraints in the chain, it being his 4th night in that position and situation and plaintiff back, knees and wrist throbbed w/ excruciating pain. One of the officers slammed the shield down on the restraints that were extreme tight on plaintiff's wrist and on open cuts – causing plaintiff agony & pain.

**Response:** Deny

104. **Complaint:** Plaintiff was so sleep deprived that he fell asleep w/ his eyes open. plaintiff was not fed for days and had water only once and his lip split from dehydration. Plaintiff was being assaulted, battered, denied toilet usage and food caused him emotional and mental distress and extreme mental anguish and anxiety. Plaintiff is now diagnosed w/ major depression disorder and takes psych medication and pain medication daily.

**Response**: Deny

WHEREFORE, defendant requests that the case be dismissed with costs and that the court award such further relief as may be appropriate.

Respectfully submitted,

ANDREW S. BOUTROS
United States Attorney

By: s/ Ifeanyi C. Mogbana
IFEANYI C. MOGBANA
Assistant United States Attorney
327 South Church Street, Suite 3300
Rockford, Illinois 61101
(815) 987-4444
ifeanyi.mogbana@usdoj.gov

**Certificate of Service**

The undersigned Assistant United States Attorney hereby certifies that in accordance with Fed. R. Civ. P. 5, LR 5.5, and the General Order on Electronic Case Filing (ECF), the following documents:

**ANSWER TO COMPLAINT**

was served pursuant to the district court's ECF system as to ECF filers, if any, and was caused to be sent by first-class mail on December 22, 2025, to the following non-ECF filers:

**SPECIAL MAIL – Open in the presence of the inmate only**
Fabrieal Delaney
#43749-424
USP McCreary
U.S. Penitentiary
P.O. Box 3000
Pine Knot, KY 42635

s/ Ifeanyi C. Mogbana
IFEANYI C. MOGBANA
Assistant United States Attorney
327 South Church Street Suite 3300
Rockford, Illinois 61101
(815)987-4444
ifeanyi.mogbana@usdoj.gov